IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PLATINUM COMMUNITY BANK, a Federal Savings Bank, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 06 C 3544 ) |
| MARSHALL INVESTMENTS CORPORATION, a Delaware Corporation, | ) ) ) |
| Defendant. | ) ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Platinum Community Bank ("Platinum") filed a complaint against defendant Marshall Investments Corporation ("Marshall") seeking to recover money from a $16,455,000 commercial loan ("Loan") originated, closed, and funded by Marshall, in which Platinum purchased an undivided percentage interest. Pending before the court is a First Amended Motion to Intervene filed by movants Alliant Bank, Kansas State Chartered Bank, State Bank of Kenmare, Citizen State Bank of Mohall, Montana State Bank, and Karnes County National Bank of Karnes City (collectively "Movants"). (Dkt. No. 103.) Also pending before the court is Platinum's Amended Motion for Leave to File Amended Complaint and to Enlarge the Existing Scheduling Order. (Dkt. No. 104.) For the reasons set forth, below Movants' First Amended Motion to Intervene is granted with respect to the six named intervenors and denied with respect to Movants' request to add additional plaintiffs. Platinum's Amended Motion for Leave to File an Amended Complaint and to Enlarge the Existing Scheduling Order is granted with respect to

1

its claims for fraud in the inducement (Count I), rescission of the participation agreements (Count III), breach of contract (Count IV), conversion (Count V), and unjust enrichment (Count VI), and denied with respect to the claim for negligence in performance of a voluntary undertaking (Count II). Platinum's motion is also denied as moot with respect to its motion to enlarge the existing scheduling order, and the parties are ordered to confer and file a revised Form 35 containing suggested dates to complete the scheduling of this litigation.

BACKGROUND

Based on its participation interest in the Loan, Platinum originally asserted claims for breach of contract (Count I), negligent misrepresentation (Count II), fraudulent misrepresentation (Count III), and recession of participation agreement (Count IV). (Dkt. No. 1 at 4-8.) Each of the Movants also purchased a participation interest in the Loan from Marshall and now seeks to become a plaintiff in this case. Further details about these issues will be discussed below as they become relevant to the analysis and resolution of the disputes before this court. This court has jurisdiction over this case pursuant to 28 U.S.C. § 1332, diversity of citizenship.

LEGAL STANDARD

In Movants' First Amended Motion to Intervene, Movants seek an order enabling them to, "intervene in the pending lawsuit as additional parties Plaintiff [sic], pursuant to Fed. R. Civ. P. 20(a)." (Dkt. No. 103 at 1-2.) A Rule 20(a) motion to join, however, is filed by a person or entity who is already a party to the proceeding and wishes to add a non-party as a party to the case. A Rule 24(b) motion to intervene is used by non-parties to add themselves as parties in the litigation. Therefore, Rule 24(b) properly governs Movants' motion.

Under Federal Rule of Civil Procedure 24(b), on a timely motion, the court may allow anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Whether an application to intervene was filed too late is to be determined from all the circumstances shown. *Clark v. Sandusky,* 205 F.2d 915, 918 (7th Cir. 1952). The determination of timeliness of a motion to intervene is a matter committed to "the sound discretion of the District Court." *South v. Rowe,* 759 F.2d 610, 612 (7th Cir. 1985).

## ANALYSIS

1. Movant's Motion to Intervene

In assessing whether to allow a motion to intervene, the court must first determine whether Movants' claims share a common question of law or fact with the main action in this case. In the instant case, Movants argue that "each Movant has causes of action seeking the same types of damages from the same Defendant arising from the same transaction or occurrence as Platinum." (Dkt. No. 103 at 2.) Specifically, Movants cite "Marshall's marketing, closing, selling and servicing of the Loan and its Participation Interests," as common questions of fact. (*Id.*) Marshall does not dispute this characterization; rather, in its Brief in Opposition to Platinum's and the Movants' Motions, Marshall argues that adding plaintiffs would subject it to undue prejudice and that Platinum and Movants have not shown good cause for what Marshall considers their untimely motions.

3

There are four factors that weigh on whether a motion to intervene is considered timely. These factors are: (1) the length of time the intervenor knew or should have known of his or her interest in the case; (2) the prejudice to the original party caused by the delay; (3) the resulting prejudice to the intervenor if the motion is denied; and (4) any unusual circumstances. *Ragsdale v. Turnock,* 941 F.2d 501, 504 (7th Cir. 1991). The court must address all of these factors in deciding whether to grant the pending motion to intervene.

The first issue to examine is the length of time that the intervenors knew or should have known of their interest in the case. This case was originally filed in Illinois state court on June 9, 2006. (Dkt. No. 111 at 2.) However, due to unusual circumstances in this case, Movants may not have been on notice of their interest in the pending litigation at that time. On June 14, 2006, Marshall's counsel sent a letter to Platinum demanding that Platinum cease and desist from contacting for any purpose other participants involved in the Loan agreement. (Dkt. No. 111, Ex. F.) This cease and desist letter was mailed just five days after Platinum filed this case and Marshall's intended effect of that letter was to significantly affect Movants' ability to gain knowledge of their interest in this litigation, by hindering Platinum in attempting to contact the Movants and inform them of its lawsuit against Marshall. Approximately eighteen months after that, on December 18, 2007, which was approximately three months before Movants' First Amended Motion to Intervene, Marshall sent an e-mail to all of the Loan participants acknowledging the existence of Platinum's lawsuit and stating, "although we all may be disappointed in the performance of the borrower and the project, there is no basis for any Participant to recover from Marshall." (Dkt. No. 111, Ex. G.) Marshall also stated in the December 18, 2007 e-mail, "[w]e encourage Participants to continue working with Marshall,

4

rather than bringing a baseless legal claim that will result only in a loss of time and money." (*Id.*) It is unclear from the record whether this was the first time Movants were informed that litigation was pending against Marshall regarding the Loan. However, in light of Marshall's own actions seeking to quell communication among the participants regarding this lawsuit, this court finds that Movants' delay alone does not warrant denial of their motion.

The next factor in determining whether a motion to intervene is timely is the prejudice to the original parties. *Ragsdale,* 941 F.2d 501, 504 (7th Cir. 1991). Marshall claims that it would suffer severe prejudice if Movants' motion were to be granted, in that the scheduling order in this case would need to be modified, choice of law issues would need to be addressed, and Marshall would be required to defend itself against at least six additional plaintiffs. This court addresses each of these arguments in turn.

First, Marshall asserts that Movants must demonstrate good cause for their motion to intervene under Rule 16(b) because the proposed amendments require modification of the court's scheduling order. Marshall's assertion is generally correct. However, in this case the scheduling order was vacated on January 17, 2008. (Dkt. No. 97.) Because the scheduling order has already been vacated, the addition of Movants to the case would not require modification of any existing scheduling order and Marshall's argument is irrelevant. Likewise, Platinum's motion to enlarge the existing scheduling order is moot.

Marshall next argues that it will be prejudiced by the choice of law issues that additional plaintiffs would introduce to this lawsuit. (Dkt. No. 108 at 12-14.) In support of this argument, Marshall asserts that the choice of law provision from the participation agreement only covers breach of contract claims and not tort claims. (Dkt. No. 108 at 17 n. 5.) To the extent that each

5

of the Movants has alleged tort claims against Marshall, Marshall contends that many different state laws will need to be applied if Movants' motion is granted. To fully analyze this issue, the court must examine which state's substantive law will apply to Movants' claims.

Federal courts in diversity cases apply the choice of law rules of the state in which the court sits. *Midwest Grain Prods. of Ill., Inc. v. Productization, Inc.* 228 F.3d 784, 787 (7th Cir. 2000). Accordingly, this court will apply Illinois choice of law rules to determine which state's substantive law applies to the claims at issue. Generally, contractual choice of law provisions will be honored under Illinois law. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 770 N.E. 2d 177, 194 (Ill. 2002). In this case, the participation agreement at issue includes a choice of law provision stating "[t]his agreement shall be deemed to constitute a contract under and shall be construed and enforceable in accordance with the laws of the State of Minnesota." (Participation Agreement ¶ 7.9.) The parties agree that Minnesota law applies to Movants' breach of contract claims and their conversion claims. (Dkt. No. 108 at 17.) They disagree as to whether the choice of law provision applies to the other claims alleged by Movants.

In determining the breadth of a contractual choice of law provision under Illinois law, courts apply a two-part analysis. *Medeline Indus. Inc. v. Maersk Med. Ltd.,* 230 F. Supp. 2d 857, 863 (N.D. Ill. 2002) (Alesia, J.). Initially, the court must examine the language of the contract's choice of law provision to determine if the parties "intended [it] to govern all claims between them." *Id.*; *see Kuehn v. Children's Hosp. of Los Angeles,* 119 F. 3d 1296, 1302 (7th Cir. 1997) (a contractual choice of law provision "will not be construed to govern tort as well as contract disputes unless it is clear that is what the parties intended"). Next, the court must determine

6

whether the claims at issue are dependent on the contract that contains the choice of law provision. *Medline Indus. Inc.,* 230 F. Supp. 2d at 862.

In the instant case, the participation agreement states, "[t]his agreement shall be deemed to constitute a contract under and shall be construed and enforceable in accordance with the laws of the State of Minnesota." (Participation Agreement ¶ 7.9.) In *Precision Screen Machines, Inc. v. Exelon, Inc.*, the court applied Illinois choice of law rules to similar contractual language and found "nothing in this clause that indicates the parties' clear intent to apply New Jersey law to all disputes between them." *Precision Screen Mach., Inc.,* No. 95 C 1730, 1996 U.S. Dist. WL 495564, at *2 (N.D. Ill. Aug. 28, 1996) (provision stating that the contract "shall be governed and construed in accordance with, the internal laws of the State of New Jersey"). Similarly, based on the plain language of the contract's choice of law provision in this case, the court finds no indication that the parties intended the choice of law provision to apply to issues other than contract interpretation and enforcement.

However, many of Movants' additional claims appear to involve matters of contract interpretation and enforcement. Furthermore, as previously mentioned, tort claims that are dependent on a contract are "subject to [the] contract's choice of law clause[,] regardless of the breadth of the clause." *Medline Indus. Inc.,* 230 F. Supp. 2d at 862. To determine if a tort claim is dependant on the contract, courts examine whether: "(1) the claim alleges a wrong based upon interpretation and construction of the contract; (2) the tort claim is closely related to the parties' contractual relationship; or (3) the tort claim could not exist without the contract." *Amakua Development LLC v. Warner*, 411 F. Supp. 2d 941, 955 (N.D. Ill. 2002) (Filip, J.).

In the present case, Movants allege fraud in the inducement (Count I)**,** negligence in performance of a voluntary undertaking (Count II), rescission of the participation agreements (Count III), breach of contract (Count IV), conversion (Count V), and unjust enrichment (Count VI). Without deciding whether these claims are properly alleged as torts,[1] the court finds that each of the claims alleges wrongs based on the interpretation, construction, or formation of the participation agreement. For example, Movants' fraud in the inducement claim alleges that Movants would not have agreed to purchase their participation interests in the Loan but for Marshall's fraudulent misrepresentations as to the Loan's equity and collateral. (Dkt. No. 104, Ex. A, Proposed First Am. Compl. at 17.) Claims involving fraud in the formation of the contract are subject to that contract's choice of law provisions. *Doty v. Stoecker,* 697 F. Supp. 1016, 1020 (N.D. Ill. 1988) (Aspen, J.). Similarly, Movants' claim for rescission of the participation agreements revolves around their allegations of fraud or mistake in the formation of these contracts. (Proposed First Am. Compl. at 24.) Movants' unjust enrichment claim is closely related to the parties' contractual relationship, in that it revolves around Marshall's "fraudulent marketing ploy" to entice Movants to become participants in the Loan. (*Id.* at 27.) As recognized above, the parties do not dispute that the participation agreements' choice of law provision applies to Movants' breach of contract and conversion claims.

Because each of Movants' claims is closely related to the parties' contractual relationship and could not exist without the participation agreements, this court finds that Minnesota law

---

[1] For example, fraud in the inducement is generally considered a contractual defense that renders a contract voidable at the election of the injured party. *Millbank Mut. Ins. Co. v. Schmidt*, 304 F. 2d. 640, 642 (8th Cir. 1962).

applies to all of Movants' claims.² Marshall therefore would not face any prejudice due to the application of many state laws in this case.

Finally, Marshall argues that it will be prejudiced by having to defend against at least six (6) additional plaintiffs. By its very nature, a motion to intervene has the potential to increase both the other party's exposure to liability and its litigation costs. As with an amended complaint, however, this is "hardly the type of prejudice which can be considered 'undue.'" *Adair v. Hunt Int'l Resources Corp.,* 526 F. Supp. 736, 739-40 (N.D. Ill. 1981) (Moran, J.). This factor alone does not constitute undue prejudice, nor does it warrant the denial of Movants' motion.

The last issue the court must examine is the resulting prejudice to Movants if their motion is denied. In this case, if the motion to intervene is denied there will be little resulting prejudice to Movants. Each of the Movants would still be able to initiate an action against Marshall should it choose to do so, as long as the statute of limitations under Minnesota law has not run. The statute of limitations in Minnesota for breach of a written contract is six years. Minn. Stat. Ann. §541.01. Based on the allegations in the proposed first amended complaint, it appears that the earliest Movants' claims could have accrued is February 2003, when Marshall first began soliciting Movants to participate in the Loan. (Dkt. No. 104 at 4.) Based on this date, the statute of limitations is not a bar and Movants have until February 2009 to initiate a separate action should they choose to do so. Movants also argue that the cost to file individual lawsuits if their motion is denied would be cost prohibitive. This court is not persuaded that the civil case filing fee of three hundred and fifty dollars demonstrates prejudice to Movants.

---

²The court addresses the claim for negligent performance of a voluntary undertaking in its analysis below.

Ultimately, because Movants' proposed claims share common questions of fact with the underlying litigation in this case and the court has found no prejudice to Marshall if Movants' motion is granted, this court grants Movants' motion to intervene with respect to the six named loan participants.

Movants have also requested in their motion that this court grant leave to any other participants in the Loan to intervene in the litigation on or before the forty-fifth day after the entry of this court's order. (Dkt. No. 103 at 3.) This court cannot find, nor has Platinum cited, any case law or other legal authority according this court the authority to reserve places in the first amended complaint for future parties that may or may not seek to join this litigation. This court therefore denies Movants' request to reserve paragraphs 12 – 30 in the first amended complaint for future allegations regarding other co-participant bank plaintiffs. If other banks in the future wish to join this litigation, they may attempt to do so by filing a motion to intervene as Movants have done.

2. Platinum's Amended Motion for Leave to File an Amended Complaint

Finally, the court turns to Platinum's Amended Motion for Leave to File Amended Complaint. In its motion, Platinum seeks to "modif[y] the substantive allegations in the pending complaint based on issues revealed through discovery or through [the] Defendant's conduct during the litigation." (Dkt. No. 104 at 2.) Specifically, Platinum seeks to amend its fraud, breach of contract, and rescission claims and add causes of action based on conversion, unjust enrichment, and negligent performance of a voluntarily undertaken duty. (*Id*.) The proposed First Amended Complaint also alleges each of these claims on behalf of Movants. Under

Federal Rule of Civil Procedure 15, a party may amend its pleading only with the opposing party's written consent or with the court's leave. Fed. R. Civ. Pro. 15(a)(2). The court should freely give leave to amend when justice so requires. *Id.* Leave to file an amended complaint should be granted liberally, however it may be denied on the grounds of undue delay, bad faith, dilatory motive, prejudice, or futility. *Guise v. BWM Mortgage, L.L.C.,* 377 F. 3d 795, 801 (7th Cir. 2004).

Marshall asserts that the addition of Platinum's[3] fraudulent inducement, rescission, and unjust enrichment claims would be futile, and that Platinum fails to state a claim for negligent performance of a voluntary undertaking and for breach of contract. (Dkt. No.108 at 16–20.) Marshall correctly states that under Rule 15(a) leave to amend should be denied if futile. (Dkt. No. 108 at 15.) However, Marshall is not correct in arguing that an amendment is futile if the proposed claims would not survive summary judgment. Unless a summary judgment is pending, futility is generally measured by whether the amendment would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Peoples v. Sebring Capital Corp.*, 209 F.R.D. 428, 430 (N.D. Ill. 2002) (Gottschall, J.) In this case the test is whether Platinum's proposed claims would survive a 12(b)(6) motion to dismiss. If the proposed amendment is not clearly futile, denying leave to amend on this ground is improper. *See* Wright & Miller, 6 Federal Practice & Procedure §1487, at 637-642 (2d ed. 2000).

To the extent Marshall argues that the addition of Platinum's fraudulent inducement, rescission, and unjust enrichment claims would be futile because these claims would not survive

---

[3] For ease of use, the court adopts the parties' language in referring to the amended claims as Platinum's. However, the court recognizes that these claims are asserted by Movants as well.

summary judgment, the court rejects Marshall's argument as a matter of law. The court addresses below Marshall's argument that Platinum has failed to state a claim for negligent performance of a voluntary undertaking and for breach of contract, pursuant to 12(b)(6).

In conducting its analysis the court presumes, as it must at this stage of the litigation, that all well-pleaded allegations in the proposed First Amended Complaint are true. *See Erikson v. Pardus*, ___U.S.___, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl. Corp. v. Twombly,* ___U.S.___, 127 S. Ct. 1955, 1969 (2007)). Under the Federal Rules of Civil Procedure, a complaint generally need not contain more than "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds on which it rests." *Twombly,* 127 S. Ct. at 1969 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F. 2d 1510, 1520 (7th Cir. 1990). As a general matter, "[c]omplaints need not anticipate or attempt to defuse potential defenses." *Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005). However, if a complaint includes facts that undermine its own allegations, a plaintiff can plead himself out of court. *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008). Any exhibits attached to a complaint are considered to be a part of the pleadings. *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005).

Marshall alleges that, by the terms of the participation agreement, Platinum cannot state a claim for breach of contract based on Marshall's failure to enforce covenants related to the timely payment of assessments or its authorization of draws for improvements to the Pollan and Holmes Tracts. (Dkt. No. 108 at 21.) In support of this argument, Marshall cites specific

provisions in the participation agreement which state, "[p]articpant . . . agrees that the Lender shall not be responsible for nor warrants or represents the payment, performance or observance by Borrower or any other Obligor of any of the terms, covenants or conditions of the Loan documents." (*Id*.) Marshall also notes that the participation agreement provides that Marshall shall only be liable for conduct arising out of gross negligence or willfull misconduct and even then, shall not be liable for any conduct taken in good faith. (*Id.* at 22.) Because Platinum has not alleged that Marshall's conduct was willful or grossly negligent, Marshall argues they have not stated a claim for breach of contract. Plaintiffs can plead themselves out of court if their complaint shows or demonstrates that they cannot recover. However, no facts Platinum has alleged demonstrate that Marshall's conduct was not willful or grossly negligent. After examining the allegations in Platinum's proposed First Amended Complaint, this court finds that Platinum has stated a claim for breach of contract which may entitle them to relief. This court need not address the merits of Platinum's breach of contract claim at this stage of the proceedings.

Finally, the court turns to Platinums' claim for negligent performance of a voluntarily undertaken duty. Marshall asserts that the theory of negligent performance of a voluntary undertaking applies only to injury of a bodily or physical nature. (Dkt. No. 108 at 20.) Marshall claims that because Platinum only alleges economic damage, it cannot seek recovery under the voluntary undertaking doctrine. (*Id*.) This court has not found, nor has Platinum cited, any cases in which the voluntary undertaking doctrine has been applied to claims alleging economic harm. *See* RESTATEMENT (SECOND) OF TORTS § 323 . Accordingly, this court denies Platinum leave to file a claim for negligent performance of a voluntarily undertaken duty.

CONCLUSION

For the foregoing reasons, Movants' First Amended Motion to Intervene is granted with respect to the six (6) named intervenors and denied with respect to Movants' request to add additional plaintiffs. Platinum's Amended Motion for Leave to File Amended Complaint and Enlarge the Existing Scheduling Order is granted with respect to its claims for fraud in the inducement (Count I), rescission of the participation agreements (Count III), breach of contract (Count IV), conversion (Count V), and unjust enrichment (Count VI), and denied with respect to the claim for negligence in performance of a voluntary undertaking (Count II). The First Amended Complaint is to be filed on or before August 8, 2008. Platinum's motion is denied as moot with respect to its motion to enlarge the existing scheduling order. The parties are to confer on a new proposed schedule on or before August 13, 2008. A revised Form 35 setting a new proposed schedule for the case it to be filed on or before August 14, 2008. The case is set for a report on status and entry of a revised scheduling order at 9:00am on August 19, 2008.

ENTER:

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: July 29, 2008